Donald **BINDER**, Plaintiff–Appellant,

v.

**LONG ISLAND LIGHTING COMPANY,**
Defendant–Appellee.

No. 568, Docket 94–7483.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1994.

Decided June 8, 1995.

Lawrence C. Downes, Gilroy Downes Horowitz & Goldstein, New York City, for plaintiff-appellant.

Joseph E. Gulmi, Richards & O'Neil, New York City (Robert J. Grey, Mindy S. Novick, Hicksville, NY, of counsel), for defendant-appellee.

Samuel A. Marcosson, Washington, DC (James R. Neely, Jr., Gwendolyn Young Reams, Vincent J. Blackwood, of counsel), for amicus curiae E.E.O.C.

Before: WINTER, MAHONEY, and GODBOLD,* Circuit Judges.

WINTER, Circuit Judge:

Donald Binder appeals from Judge Mishler's grant of judgment n.o.v. and alternative grant of a new trial on the ground that the verdict was against the weight of the evidence. These rulings followed a jury verdict finding the Long Island Lighting Company ("LILCO") liable for discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the New York Human Rights Law, N.Y.Exec.

---

* The Honorable John C. Godbold, Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Law § 296. Binder contends that there is sufficient evidence to sustain the jury's verdict and that the district court erred by granting LILCO's motion for judgment notwithstanding the verdict. We reverse the district court's grant of judgment n.o.v. We hold that the alternative grant of a new trial is reviewable on an abuse of discretion standard and reverse. With regard to damages, we order a remittitur of the award of compensatory damages to $552,337, to be doubled because of the jury's finding of wilfulness, which is supported by the evidence. We affirm the district court's remittitur of the award for pain and suffering to $5,000.

### BACKGROUND

This is the second time this matter has been before us. Familiarity with our prior decision is assumed. *See Binder v. Long Island Lighting Co.,* 933 F.2d 187 (2d Cir. 1991) (*"Binder I "*).

Given the jury's verdict for Binder, we view the evidence in the light most favorable to him. Binder began working for LILCO in 1955, shortly after receiving a bachelor's degree in mechanical engineering. Over the next 31 years, Binder progressed through the ranks at LILCO, while earning favorable performance evaluations. He started in the gas division, acting as a project engineer and, later, overseeing the design and construction of gas manufacturing plants. Later, Binder became involved in LILCO's nuclear program. He received a master's degree in nuclear physics and took additional courses in reactor design, operation, and safety. Binder was the original quality assurance administrator for the Shoreham nuclear project, and later became the project engineer for Shoreham. When LILCO formed a division of nuclear engineering, Binder was chosen as its first division manager. When the division was elevated to departmental status, Binder became its first department manager and later assistant to the vice president in charge of nuclear operations.

Binder's various job titles were: from 1955 to 1958, junior engineer; from 1958 to 1964, associate engineer; from 1964 to 1969, engineer; in 1969, senior engineer; from 1969 to 1970, Shoreham quality assurance adminis-trator; from 1970 to 1973, project engineer; from 1973 to 1979, division manager; from 1979 to 1984, department manager; and from May 1984 to November 1984, assistant to the vice president of nuclear operations.

In December 1984, Binder became a consulting engineer on the staff of Matthew Cordaro, vice president of engineering and administration. In this position, Binder represented Cordaro at meetings and also acted as a troubleshooter for Cordaro, particularly with respect to cost overruns on LILCO's large projects. There was evidence that Binder performed well as Cordaro's assistant.

William Catacosinos became chief executive officer of LILCO in 1984 and immediately began a massive reorganization. Cordaro had been delegating large amounts of responsibility to his two staff assistants, Binder and Walter Ferraro, but Catacosinos wanted senior managers like Cordaro to take a more active, hands-on role. In late 1985, Catacosinos sought the elimination of all staff assistant positions, including those held by Binder and Ferraro. Cordaro initially resisted but, in September 1986, he notified Binder that his position, along with Ferraro's, was going to be eliminated. Cordaro told Binder to see Robert Kelleher, vice president of human resources, about finding another position at LILCO.

Positions at LILCO were generally filled in one of two ways. Management succession was used to place employees in positions of division manager or higher. Under this process, the human resources department nominated candidates. Self-nomination was used with regard to positions below division manager. Under the self-nomination method, vacancies would be posted on bulletin boards, and candidates would apply for the open position. Binder never applied to fill an open position.

However, Binder clearly expressed his desire to find another position at LILCO. As suggested by Cordaro, Binder met with Kelleher and discussed what could be done to find him another position. Kelleher asked Binder for his preferences—which Binder gave. These preferences included, *inter*

*alia,* project management and co-generation. Significantly, Binder never informed Kelleher that there were jobs in the company that he would refuse to take. Kelleher told Binder that he would investigate available positions, and Binder testified that he was, at the time, relying upon Kelleher to find him a new position.

Meanwhile, in August 1986, Christopher Cole began to organize a new project management department at LILCO. He initially proposed a structure comprised of three division managers and eighteen subordinate positions. Ten of the subordinate positions were approved and transferred from other areas in LILCO. Some of these ten positions were already staffed, but others were vacant. Seven other positions were later approved on the condition that they too would involve transfers within LILCO.

After Binder's meeting with Kelleher, Cole approached Binder about joining the project management department. When Binder expressed interest, Cole suggested that he speak with Martin Mullarkey, one of the division managers in the project management department. Mullarkey, who had earlier been hired at LILCO by Binder, told Binder that he wanted him to work on an instructional manual for project managers. They did not discuss job title or salary level. According to Binder's testimony, Mullarkey initiated the process of transferring Binder to his group by filling out a change of status form.

Binder then met with Cole, who was Mullarkey's supervisor, and Cole, according to Binder's testimony, prepared a personnel requisition form that requested authorization for a position for Binder to allow him to work on the manual. A requisition form is required when a new position is created, while a change of status form is used when an employee moves to an existing position. After Cole signed the requisition form, it went to Cordaro for approval. Catacosinos denied authorization to create the new position.

Binder continued to work on Cordaro's staff, but, near the end of 1986, February 1, 1987 was designated as a target date for the elimination of Binder's position. Also in late 1986, Ferraro's position was eliminated, but he was transferred to a lower level job at LILCO. Ferraro was 48 years old at the time.

On February 3, 1987, Cordaro informed Binder that his position had been eliminated and that Catacosinos considered Binder a poor performer. Approximately two days later, Kelleher dropped by Binder's office. Binder asked Kelleher why Catacosinos was displeased with his performance. Kelleher advised Binder to think of his pending dismissal as equivalent to the mass layoffs that had occurred several years before. Binder also told Kelleher that he was incredulous that no other position could be found for him at LILCO.

Binder subsequently brought the present action, alleging violation of the ADEA and the New York Human Rights Law. Binder, who was 57 years old when terminated, claimed that LILCO: (i) eliminated his staff assistant position because of his age; (ii) refused to create a new position for him because of his age; and (iii) refused to consider him for any other available position because of his age. The district court granted summary judgment for LILCO on all three claims. We affirmed as to the first two claims but reversed and remanded Binder's third claim. *See Binder I.* We observed that "[t]he ADEA does not forbid employers from adopting policies against 'underemploying' persons in certain positions so long as those policies are adopted in good faith and are applied evenhandedly," but that the issues of good faith and evenhanded application were for the trier of fact to resolve. *Id.* at 193. We concluded that there was a material issue of fact regarding whether LILCO's agent, Kelleher, "was acting out of a genuine desire to avoid placing Binder in a job in which he might be frustrated, exhibit low morale and perform poorly" or was offering that explanation as a pretext to disguise age discrimination. *Id.*

Binder argued to the jury that LILCO considered only his age and not his accomplishments in declining to offer him any other available position in the company. LILCO contended that there were legitimate nondiscriminatory reasons for not offering

Binder another position: Binder never applied for any of the positions that were filled by self-nomination, and Binder was overqualified for those open positions that were filled by management succession.

The jury deliberated for less than two hours before returning a verdict in Binder's favor of $828,505 for lost wages and $497,738 for pain and suffering. It also found that LILCO's discrimination against Binder was willful. *See* 29 U.S.C. § 626(b). The district court declined to accept the verdict. Rather, over Binder's objection, the court gave the jury a supplemental question asking it to specify the positions at LILCO that were denied to Binder because of his age. The jury returned approximately one hour later with a letter to the court. This letter stated that LILCO's policy of transferring employees to different positions was not applied evenhandedly, that Binder was denied access to position opportunities because of his age, and that the jury had no doubt that if Binder, with his knowledge and experience, had been ten years younger, "a multitude of positions" would have been made available to him. The jury stated that it was impossible to believe that none of the positions in Mullarkey's division in the new project management department or other available supervisory or engineering positions at Shoreham were suitable for Binder.

Dissatisfied with the jury's letter, the court sent the jury back to reconsider its answer to the court's supplemental question. The jury returned with a list of six positions denied to Binder because of his age. The court then asked the jury if the six positions were exhaustive or merely exemplary. The jurors responded that the list was representative, not exhaustive. The district court then again sent the jury back to list any additional positions denied Binder because of his age. The jury returned with four additional positions added to the original list of six positions.

Believing that the jury's answers to its post-verdict supplemental questions were not supported by the evidence, the district court set the verdict aside. *Binder v. Long Island Lighting Co.*, 847 F.Supp. 1007 (E.D.N.Y. 1994). The court found that it was unreason-

able for Binder to rely upon Kelleher to find him a position. Of the ten positions that the jury listed, eight were below the level of division manager, and the district court held that it was Binder's responsibility to apply for those positions through the self-nomination process. Two of the ten positions were at the division manager level. As to those two positions, the district court found that there was no evidence that would allow a reasonable factfinder to conclude that Binder was the victim of age discrimination. Both positions were filled by men over the age of forty, and both positions were in electric power supply, which, in the district court's judgment, was an area outside Binder's expertise, experience, and preferences. After granting judgment as a matter of law, the district court alternatively granted a new trial on liability.

In briefing post-trial issues, LILCO agreed to "stipulate to a reduction in the amount of damages awarded as back pay to $552,337, should [the district] court not set aside the verdict in total." Defendant's Reply Memorandum of Law in Support of Its Motion for Judgment as a Matter of Law or, In the Alternative, for a New Trial at 1 n. 1. The district court thereafter held that Binder had proven no more than $552,337 in lost wages. It rejected Binder's contention that the additional $276,168 awarded as backpay was compound interest on the grounds that it was not clear that the figure was arrived at by the formula suggested by Binder and that the jury had not been instructed to award interest. Alternatively, it granted a new trial on lost wages. The district court also held that the award of $497,738 for pain and suffering was grossly excessive. It ordered a new trial on these damages also but alternatively remitted them to $5,000. In a supplemental letter brief to this court, Binder accepted LILCO's agreement as to $552,337 as the proper amount for lost wages and the remittitur to $5,000 for pain and suffering.

## DISCUSSION

### (a) *The Judgment n.o.v.*

"In ruling on a motion for ... judgment n.o.v., the district court is required to

deny the motion unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038–39 (2d Cir.1992) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970)). We apply the same standard on appeal. *Id.* at 1039. "If, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor, we must overturn the ... judgment n.o.v." *Id.*

■ In reviewing the grant of judgment n.o.v., we disregard the supplemental interrogatories posed to the jury by the court following the verdict, although the answers hardly suggest a runaway jury that disregarded the evidence. *See* Note 1, *infra*, and accompanying text. We believe their submission and use by the district court to undermine the verdict was an abuse of discretion. At the charge conference, neither party asked that the jury be instructed to specify the particular positions denied to Binder because of his age. Before summation, the district court produced a verdict sheet asking for a general verdict without supplementary interrogatories. When a verdict was returned and the district court announced that it was going to submit a supplemental question to the jury, Binder objected. The parties had fashioned their summation on the anticipation that only a general verdict was to be rendered and had no opportunity for argument to the jury directed specifically to the questions ultimately asked by the district judge. The interrogatories thus asked the jury to reach certain specific factual conclusions without the benefit of adversary argument directed to those specific issues. The jury's answers were then used in effect to impeach its general verdict.

■ We have on occasion acquiesced in the use of special interrogatories that were not shown to counsel until after summation. *See Cramer v. Hoffman*, 390 F.2d 19, 23 (2d

Cir.1968). Nevertheless, "it is the better practice under Rule 49(a) to submit special interrogatories to counsel prior to summation." *Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 330 (2d Cir.1982). But there is no authority upholding the submission of fact-specific interrogatories to a jury after a general verdict has been returned, and we note our disapproval of this procedure absent extraordinary circumstances.

We turn now to the evidence and jury verdict. Much of the dispute on this appeal concerns a legal issue regarding the import of the jury's finding that LILCO's proffered reasons for ceasing Binder's employment were pretextual. Binder argues that the jury's finding of pretext is sufficient to support the jury's finding of discrimination. LILCO argues, and the district court agreed, that "some affirmative evidence of discrimination" in addition to the finding of pretext is necessary. We agree with Binder.

■ In *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court reaffirmed its longstanding rule that "rejection of the [employer's] proffered reasons ... will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* at ——, 113 S.Ct. at 2749 (emphasis in original). If the trier of fact rejects the proffered legitimate nondiscriminatory reason, "no additional proof of discrimination is *required.*" *Id.* (emphasis in original). The Supreme Court granted certiorari in *Hicks* to resolve a split among the circuits as to whether rejection of the defendant's reasons by the trier of fact compels judgment for the plaintiff. *Id.* at ——, 113 S.Ct. at 2750. The Court held that while a trier of fact's rejection of the employer's asserted reasons does not compel a finding for the plaintiff, it permits the trier to infer discrimination. Put another way, "rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination." *Id.* at —— n. 4, 113 S.Ct. at 2749 n. 4 (emphasis in original).

This reading of *Hicks* is consistent with our previous caselaw. In *Cabrera v. Jakabovitz*, 24 F.3d 372, 385 (2d Cir.) (quotation marks omitted), *cert. denied*, —— U.S. ——,

115 S.Ct. 205, 130 L.Ed.2d 135 (1994), we made the following observation:

> [The employer] misreads the Supreme Court's statement in *Hicks* that once a defendant produces evidence of a legitimate, nondiscriminatory reason for his or her action, the plaintiff must then establish that the defendant's actions were intentionally discriminatory.... Justice Scalia took pains to preclude such an interpretation of the Court's decision when he observed that, upon rejection of the defendant's proffered reasons for its action, no additional proof of discrimination is required.

Our criticism of the defendant's argument in *Cabrera* is equally applicable to the argument made by LILCO and adopted by the district court.

■ A trier may thus generally infer discrimination when it finds that the employer's explanation is unworthy of credence. *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2d Cir.1993) ("[A] plaintiff may meet [the] ultimate burden of proof by combining her proof of the elements constituting a *prima facie* case with evidence that defendant's proffered reasons for its acts were false."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 170 (2d Cir.1993) ("Proof that the employer has provided a false reason for its action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding.").

■ Resort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct. In so stating, we do not exclude the possibility that an employer may explain away the proffer of a pretextual reason for an unfavorable employment decision. *See Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 n. 3 (1st Cir.1994). Such an explanation might include, for example, protection of a business secret or even protection of the reputation of an employee who had engaged in undesirable conduct. No such explanation was offered in the instant matter.

■ In short, the district court should not have granted judgment n.o.v. because the jury was entitled to conclude, as it did, that the explanations offered by LILCO were pretextual and to draw a permissible inference of discrimination.

In the instant matter, a rational trier could easily have disbelieved LILCO's principal proffered justification—a policy against underemployment. Our remand in *Binder I* was based in part on our view that a jury could reasonably conclude that this explanation was pretextual. We thus observed in reversing that "[a]lthough a trier would be free to conclude that Kelleher was acting out of a genuine desire to avoid placing Binder in a job in which he might be frustrated, exhibit low morale and perform poorly, it would also be free to conclude that this explanation was pretextual." 933 F.2d at 193. After the trial, the jury might have found that the placing of the other (and younger by nine years) staff assistant, Walter Ferraro, in a lower level position was inconsistent with the claimed policy against underemployment. Moreover, Binder demonstrated that there were suitable vacant positions for which he was not considered, such as in the newly created project management department or in the Shoreham nuclear facility.

■ Finally, Binder's failure to apply for positions through the posting process is not an absolute bar to recovery.[1] The jury could have concluded that Binder had applied for any available position through his conversation with Kelleher. While such a conclusion was by no means required, it was permissible. Binder testified that Cordaro instructed him to meet with Kelleher for the purposes of finding another position at LILCO. Binder also testified that it was his understanding that Kelleher would be evaluating his suitability for all available, or soon to be available, positions. The jury was free to find that Kelleher's words and deeds suggested to

---

1. Although it does not affect our disposition of this matter, we note that our conclusion in this regard undermines the reason proffered by the district court in rejecting the jury's answers to the supplemental questions involving positions below division manager.

Binder that he need not apply for positions filled through the posting process, either because Kelleher was already investigating these opportunities for Binder or because Binder could not be considered for such a position because it would violate LILCO's (pretextual) underemployment policy.

(b) *The Alternative Grant of a New Trial on the Ground the Verdict was Against the Weight of the Evidence*

 We turn now to the district court's alternative grant of a new trial on liability because of its view that the verdict was against the weight of the evidence. Rule 50(c)(1) of the Federal Rules of Civil Procedure "expressly contemplates appellate review of an order for a new trial when the order is conditioned on the reversal of a judgment granted as a matter of law." *Kirschner v. Office of Comptroller*, 973 F.2d 88, 95 (2d Cir.1992); *see also* Fed.R.Civ.P. 50(c)(1) ("In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered."). However, there is conflicting precedent within this Circuit regarding our power to review a district court's grant of a new trial on the ground that the verdict was against the weight of the evidence.[2] One line of cases states that a " 'trial court order granting or denying a motion for a new trial on grounds that a verdict is against the weight of the evidence is not reviewable on appeal.' " *Kirschner*, 973 F.2d at 96 (quoting *Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 26 (2d Cir.1989)); *see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 57 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 133 (2d Cir.1986); *Portman v. American Home Prods. Corp.*, 201 F.2d 847, 848 (2d Cir.1953). In contrast, another line of cases permits appellate review of a grant or denial of a new trial made on these same grounds. *See Caruso v. Forslund*, 47 F.3d 27, 32 (2d Cir.1995) (affirming denial of new

trial based on weight of the evidence); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 874–75 (2d Cir.1992) (reversing grant of new trial); *Hygh v. Jacobs*, 961 F.2d 359, 365–66 (2d Cir.1992) (affirming denial of new trial); *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992) (affirming grant of new trial); *Brady v. Chemical Constr. Corp.*, 740 F.2d 195, 201–02 (2d Cir.1984) (affirming denial of new trial); *Bevevino v. Saydjari*, 574 F.2d 676, 687 (2d Cir.1978) (same); *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 541–42 (2d Cir.1965) (reversing conditional grant of new trial based on weight of the evidence), *cert. denied*, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).

As a panel noted in *Dunlap–McCuller v. Riese Organization*, 980 F.2d 153, 157 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993), the line of cases precluding review originated from a decision that involved a district court's refusal to grant a litigant a new trial. *See Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 480–81, 53 S.Ct. 252, 253–54, 77 L.Ed. 439 (1933). Denying appellate review in those circumstances is of little consequence because a jury verdict is entitled to a strong presumption of correctness, and a discretionary ruling that the verdict is not against the weight of the evidence is presumptively correct. Of course, a claim that the evidence was legally insufficient can still be made on appeal because it involves an issue of law.

Very different considerations govern the review of a grant of a new trial based on the district court's conclusion that the verdict is against the weight of the evidence. *Dunlap–McCuller*, 980 F.2d at 157. In such a case, appellate review "protects the role of the jury, as envisioned by the Seventh Amendment, rather than running contrary to it." *Id.* (quoting 11 Charles A. Wright & Arthur A. Miller, *Federal Practice & Procedure* § 2819, at 126 (1973)). Moreover, a grant of judgment n.o.v. because of the insufficiency

---

2. Of course, where a district court merely grants such a motion without more, there is no appealable final judgment. *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 156 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993). However, where judgment n.o.v. is

granted, there is an appealable final judgment, and we may, if the matter is reviewable, exercise jurisdiction over an alternative grant of a new trial on the ground that the matter is against the weight of the evidence.

of the evidence is reviewable on appeal, and it would be anomalous to preclude appellate review of a grant of a new trial because the verdict was against the weight of the evidence. Although legal sufficiency and the weight of the evidence are different standards, each seeks to impose a measure of judicial control on juries, and neither entails such different considerations or analysis that one should be reviewable and the other not. To be sure, legal sufficiency is not an issue subject to discretionary judgment, unlike weight of the evidence. Nevertheless, that difference calls only for a different standard of review on appeal rather than non-availability of appellate review.

 We therefore adopt the view held by most circuits and review for abuse of discretion a trial court's decision to grant a new trial on the grounds that the verdict was against the weight of the evidence. *See id.* at 157–58 ("[M]ost other circuits review the grant of a new trial on the grounds of sufficiency of the evidence under an abuse of discretion standard." (citing cases)).[3] The district court's discretion is directed to the question of whether the jury verdict is "seriously erroneous." *See Piesco v. Koch,* 12 F.3d 332, 344–45 (2d Cir.1993).[4]

For the reasons stated in our discussion in *Binder I* and in our reversal of the instant grant of judgment n.o.v., the jury's findings of pretext and our conclusion that Binder's claim was not legally barred because of his failure to make formal applications for specific jobs lead us to conclude that the verdict, while not inexorable, was clearly not seriously erroneous. We therefore hold that the district court abused its discretion in ordering a new trial based upon the weight of the evidence.

(c) *Damages*

The district court granted a new trial on lost wages because plaintiff had proven such losses only in the amount of $552,337. As noted above, LILCO stipulated to this amount in post-trial briefing, as did Binder in his supplemental letter brief to this court.

We therefore agree that the jury's award should be remitted to $552,337. This amount should be doubled because of the jury's finding of willfulness, 29 U.S.C. § 626(b), which, given our discussion of the record and the personal involvement of LILCO's top executive, is supported by the evidence.

The district court granted a new trial on this award of damages and, alternatively, remitted the pain and suffering award to $5,000, to which Binder has agreed. We believe this award is supported by the evidence.

We therefore affirm in part and reverse in part, and order entry of a judgment in accordance with this opinion. Binder's supplemental letter brief asks for a variety of other relief, including attorney's fees and pre-judgment interest. Those matters are best addressed first by the district court.

---

**3.** We need not, and do not, address the question of whether a denial of a new trial is reviewable.

**4.** This opinion has been circulated to the active judges of the court before filing. No active judge

requested an in banc hearing. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir. 1991).