104 F.3d 353
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Inez J. NEMBHARD, Appellee,
v.
MEMORIAL SLOAN KETTERING CANCER CENTER, Appellant.
 No. 96-7406.
 United States Court of Appeals, Second Circuit.
 Nov. 22, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Chin, J.).
 
 
 1
 FOR APPELLANT:Myron D. Rumeld, Proskauer Rose Goetz & Mendelsohn, New York, NY.
 
 
 2
 FOR APPELLEE:Patrick W. McGinley, Finder and Cuomo, New York, NY.
 
 
 3
 S.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 PRESENT: HONORABLE JAMES L. OAKES, HONORABLE JOSEPH M. McLAUGHLIN, HONORABLE JOSE A. CABRANES, Circuit Judges.
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.
 
 
 7
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 8
 Nembhard was a 41 year old black woman who worked as the Payroll Supervisor in Memorial Sloan-Kettering Hospital's ("Hospital") Payroll Department ("Department"). Shelly Pope was the Payroll Manager, and Nembhard's superior. The Department was under the control of the Hospital's Controller, Marc Svenningson. Pope evaluated Nembhard's performance at regular intervals. Before 1992 her performance had "exceeded expectations," while in 1992, this became "meets expectations."
 
 
 9
 In late December, 1992, Nembhard scheduled a two-week vacation to Antigua with a companion. The end of December and January are the busiest times of year for the Department. Nembhard was supposed to return to work on January 4, 1993, but on January third, left a message with Pope that she was unable to return because her flight had been "overbooked." On Thursday the seventh, Nembhard phoned in and told Pope that, although she had managed to return to the States, she was now ill and could not come to work. She did not report to work on Friday. Later, the Hospital discovered that the flight had not been overbooked, but that Nembhard had a ticket for a later return date. In addition, the Hospital discovered that on Thursday and Friday, she had visited her companion in the hospital. She returned to work on Monday, January 11. Her absence increased the workload of the Department, but did not cause significant havoc.
 
 
 10
 By Thursday, January 7, Pope and Svenningson concluded that Nembhard's absence warranted discipline. That Friday, Pope and Svenningson met with the manager of Employee Relations, Sullivan, and decided that Nembhard's awareness of the problems her absence would cause, coupled with failure to return for an entire week and the unsatisfactory explanations for her absence, caused a loss of confidence in her performance warranting a discharge. The three decided to give Nembhard the opportunity to resign, with a severance package that included a promise not to sue the Hospital.
 
 
 11
 Nembhard returned to work on Monday the 11th, and met with Sullivan. Sullivan told her that the Hospital had lost confidence in her performance and that she had the opportunity to take the severance package. She refused, and was escorted from the hospital. Upon her termination, Pope hired Virgilio DeGala to assume Nembhard's responsibilities. DeGala was an employee of the Hospital's Accounting Department, and was a year younger than Nembhard.
 
 
 12
 Nembhard soon brought a charge of age and race discrimination before the EEOC. The EEOC referred the charge to the New York State Division of Human Rights, and eventually granted Nembhard a right to sue letter. She filed a complaint in federal court, alleging that her termination was the result of discrimination based on age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and race, in violation of Title VII, 42 U.S.C. § 2000e, et seq..
 
 
 13
 Her claim of age discrimination centered around the following events: (1) in September, 1991, Pope cancelled Nembhard's application for computer training, explaining that younger staff would be trained; (2) in July, August, and September 1992, Pope made reference to an "old, black fly" she was trying to get rid of; (3) in August, 1992, Pope told Nembhard that only older people tended to accumulate sick time; (4) In July, 1992, after Nembhard informed Pope of her willingness to train on a computer, Pope told her that the younger staff would train on computers.
 
 
 14
 Prior to trial, the Hospital moved to dismiss the age discrimination claim, arguing that Nembhard had failed to prove a prima facie case because the individual hired to replace her was 40, and Nembhard was 41. The Hospital also moved to preclude testimony regarding what it characterized as "stray remarks," having nothing to do with Nembhard's termination. Judge Chin denied the motions.
 
 
 15
 At trial, Nembhard testified that she believed Pope had plotted against her and was simply waiting for an excuse to fire her. Nembhard testified that two other individuals had returned late from their vacations, without discipline, and that Pope herself had been on maternity leave during a previous year-end busy period. Memorial showed that the two individuals who returned late from their vacations had been given express permission to do so because there were no pressing needs at the time, and that Pope's maternity leave had been planned and that two employees from different departments came to assist the Department in Pope's absence.
 
 
 16
 At the conclusion of the testimony, the Hospital moved for judgment as a matter of law. The court reserved decision. The jury returned a verdict in favor of the Hospital on the race discrimination claim, and in favor of Nembhard on the age discrimination claim. The jury found that the Hospital acted wilfully, and awarded liquidated damages to Nembhard in the form of $110,000 in back pay.
 
 
 17
 Following the verdict, the Hospital renewed its motion for judgment as a matter of law. Judge Chin denied the motion. In a written opinion he stated that there was sufficient evidence to sustain the jury's finding that Memorial fired Nembhard because of her age, reasoning that: (1) the jury could have found that Memorial's reasons for her termination were pretextual, given that other employees had returned late from vacation without termination and that Pope had expressed a desire to get rid of Nembhard; (2) the jury could have found that for a long-time employee who encountered travel problems and sickness, and who informed her employer that she would be unable to return as scheduled, termination was disproportionate punishment; and (3) the jury could have been persuaded by Pope's age-based comments.
 
 
 18
 Judge Chin concluded that there was sufficient evidence that the Hospital's conduct was wilful, because Pope testified that she knew that age discrimination was unlawful. He also concluded that the fact that Nembhard's replacement was only one year younger did not necessarily mean that Nembhard failed to prove a prima facie case, given proof of the age-based comments.
 
 
 19
 The Hospital now appeals arguing that Nembhard failed to establish a prima facie case of age discrimination and failed to meet her ultimate burden of proving discrimination because her replacement was only one year her younger and because the allegedly age-based remarks were too unrelated and too remote in time from Nembhard's termination to support an inference of age discrimination. In the alternative the Hospital argues that, if there was discrimination, it was not wilful, and liquidated damages were improper. Finally, the Hospital argues that, at minimum, it is entitled to a new trial based on Judge Chin's erroneous admission of the stray comments regarding age.
 
 
 20
 We review the district court's denial of a motion for judgment as a matter of law de novo. See Binder v. Long Island Lighting Co., 57 F.3d 193, 198-99 (2d Cir.1995). " 'In ruling on a motion for ... judgment n.o.v., the district court is required to deny the motion unless, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." ' " Id. (citations omitted). The burden of proof in an ADEA case follows the familiar map laid out in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-05 (1973): the plaintiff has the initial burden of establishing a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. The burden of persuasion then shifts back to the plaintiff to show that the defendant's articulated reason was pretextual and that discrimination was the real reason for its employment decision. The plaintiff retains the ultimate burden of proving discrimination.
 
 
 21
 1. Prima Facie Case of Age Discrimination. To establish a prima facie case of age discrimination in violation of the ADEA, the plaintiff must show that: (1) she was in the protected age group; (2) she was qualified for the position; (3) she was discharged; and (4) that " 'the discharge occurred under circumstances giving rise to an inference of age discrimination.' " Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir.1994) (citation omitted). The burden of establishing a prima facie case is de minimis. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994). The ADEA protects persons who are 40 or over. See 29 U.S.C. § 631(a). "In the age-discrimination context, [an inference that an employment decision was based on a discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1310 (1996).
 
 
 22
 Nembhard established that she was a member of a protected group, that she was qualified for the position of Supervisor of the Payroll Department, and that she was terminated. The parties contest whether Nembhard proved circumstances giving rise to an inference of discrimination. The evidence of discrimination consisted of: (1) the fact she was replaced by a younger person; and (2) Pope's comments about older workers.
 
 
 23
 While the fact that Nembhard was replaced by someone only a year younger, alone, does not necessarily support the inference that the Hospital terminated her due to her age, when her termination is bathed in the light of the Pope's comments, a reasonable jury could infer that her termination was due to her age.
 
 
 24
 The Hospital argues that the comments were not age-based, but even if they were, the remarks were "stray" and temporally divorced from Nembhard's termination so that they have no connection whatsoever with the Hospital's decision to end her employment. We recognize that many circuits have held that for such comments to sustain a prima facie case, they must have some connection to the employer's decision to terminate the plaintiff. McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686-87 (7th Cir.1991) ("[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge."). We also note that stereotyping, stray remarks may be evidence that age played a part in the employment decision--although they do not compel that conclusion. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989).
 
 
 25
 It is reasonable to conclude that the comments regarding computer training and sick time had age-based overtones. Pope's comments are evidence of a discriminatory employment decision. Given that the plaintiff's burden is only de minimis in proving a prima facie case, we conclude that Nembhard established a prima facie case of discrimination.
 
 
 26
 2. Pretext. The Hospital argues that it fired Nembhard for her failure to report to work for one week after a two-week vacation, at a time that jeopardized the stability of the Payroll Department. Nembhard argues that this reason was just a pretext for firing her. She points to the fact that Pope took a maternity leave during a previous busy period and that two other employees returned late from work without adverse consequences. The jury found the reason was pretextual.
 
 
 27
 After the defendant articulates a legitimate nondiscriminatory reason for its employment decision, the plaintiff must prove by preponderance of the evidence that the defendant's stated reasons were pretextual and that discrimination was the real reason for termination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).
 
 
 28
 Judge Chin relied on two events to conclude that the jury could have found the Hospital's reasons were pretextual: (1) the fact that Pope took a maternity leave in the midst of a previous busy season; and (2) two other employees had returned late from vacation without any adverse employment decision. The Hospital presented evidence that: (1) Pope's maternity leave was scheduled, and two accounting department staffers were brought in to help in her absence; and (2) the two employees who arrived late from vacation (a) did not take vacation during the busy season, (b) called in and were excused, and (3) were absent for only one day. These actions, however, must be set against a backdrop of age-related comments that had occurred throughout the course of 1992.
 
 
 29
 A rational juror could find that Nembhard proved by a preponderance of evidence that the Hospital's reasons for firing her were pretextual. Viewing the evidence in a light most favorable to Nembhard, a reasonable juror could find that the comments, coupled with the rather harsh employment action against a seventeen-year veteran of the Hospital who had received glowing reviews throughout her career, proved by a preponderance of the evidence that the Hospital's articulated reasons for termination were pretextual.
 
 
 30
 3. Ultimate Burden of Proving Discrimination. The Hospital argues that, assuming that Nembhard proved that the Hospital's reason for terminating her was pretextual, Nembhard still did not carry her ultimate burden of proving that the real reason for her termination was age discrimination.
 
 
 31
 Once the plaintiff proves by a preponderance of the evidence that the stated reason for termination was pretextual, the plaintiff still has the burden of proving by a preponderance of the evidence that discrimination was the real reason for the termination. "The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination." St. Mary's, 509 U.S. at 511; see also Binder v. Long Island Lighting Co., 57 F.3d 193, 199 (2d Cir.1995). The plaintiff must show "both that the reasons [for termination advanced by the employer] was false, and that discrimination was the real reason." St. Mary's, 509 U.S. at 515. Evidence that an employee was treated more harshly than others for similar infractions can constitute evidence of pretext. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 282-83 (1976).
 
 
 32
 Judge Chin held that the evidence of pretext, coupled with the evidence of disparate treatment and the age-based comments, was enough to support the jury's verdict that the Hospital discriminated against Nembhard. The evidence of pretext, and age-related statements used to support Nembhard's prima facie case, together with the harsh treatment of a veteran employee with a near-unblemished employment record, supports the conclusion that discrimination was the motivation behind her termination. We cannot say, on this record, that there is but one conclusion that reasonable jurors could have reached.
 
 
 33
 We have considered all of the arguments raised by the Hospital, and find them to be without merit.
 
 
 34
 Accordingly, the judgment of the district court is AFFIRMED.