Dennis JAMES, Plaintiff–Appellant,

v.

NEW YORK RACING ASSOCIATION,
Defendant–Appellee,

and

New York State Racing & Wagering
Board, Defendant.

Docket No. 00–7040.

United States Court of Appeals,
Second Circuit.

Argued: June 26, 2000

Decided: Nov. 29, 2000

---

Raymond Nardo, Mineola, NY, for Appellant.

Patricia Farren, New York, NY, for Appellee.

Before: LEVAL, PARKER, and KATZMANN, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff-appellant Dennis James appeals from the district court's grant of summary judgment to defendant-appellee New York Racing Association ("NYRA"). James brought suit in federal district court pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.*, and the New York City Human Rights Law, Admin. Code of the City of New York § 8–101 *et seq.*, complaining that NYRA discriminated against him on the basis of age in terminating his employment. The district court granted summary judgment to NYRA, holding that NYRA offered a legitimate explanation for discharging James, and that James did not submit evidence that could support a finding that NYRA was motivated by age discrimination. Because the record did not include evidence from which a reasonable factfinder could find that NYRA terminated James's employment due to age discrimination, we affirm.

## BACKGROUND

In 1989, when James was 52 years old, he was hired by NYRA as its Assistant Security Director. In 1994, NYRA appointed 66 year-old Kenny Noe its President and General Manager, and later Chairman of the Board of Trustees. At the time, NYRA found itself in financial difficulty, and accordingly, Noe began a program of reorganization and downsizing that reduced the number of NYRA employees by 11 percent, produced a 12.5 percent reduction in payroll costs, and cut the racing schedule from six to five days per week, producing a savings of six million dollars per year. The reorganization program also entailed stopping overtime pay for weekend and holiday work, and reducing the number of paid holidays. In 1995, Noe hired Robert Kibbey, then 67

years old, as NYRA's Security Director, and gave James, then 58 years old, additional responsibilities, a 30 percent raise, and the use of a company car. Noe was the ultimate decisionmaker regarding employment at NYRA.

In October 1996, NYRA (through Noe) terminated James's employment, listing "downsizing" as the reason for termination in James's personnel file. James was then 59 years old. One week later, NYRA hired John Tierney, then 42 years old, as Assistant to the Director of Security (as opposed to "Assistant Security Director," James's title). While James's annual salary was 60,000 dollars at the time he was discharged, Tierney assumed his position at an annual salary of 55,000 dollars. Tierney was placed at James's former desk, was assisted by James's former secretary, and took over many of James's former duties, as well as other duties.

While James does not dispute that NYRA engaged in a downsizing, he contends that, because of a promotion and a new hire, his layoff did not result in any net downsizing. He therefore contends that NYRA gave a false or "pretextual" reason for his dismissal. NYRA points out in response that some of James's responsibilities were reassigned to other employees and that although some of Tierney's duties overlapped with James's, the overall reorganization resulted in Tierney's assuming a different grouping of responsibilities, for lower pay, than James had had.

In addition, James points to a few generalized remarks made at various times by senior NYRA managers in the context of NYRA's precarious financial condition, expressing the hope to "save NYRA for the younger guys," so that the "younger guys ... could have a job in the future," and that there were "too many older supervisors and some of them needed to retire." James also offered vague testimony that jokes had been told about age, but with no suggestion that the jokes disparaged older workers.

*DISCUSSION*

In addressing an appeal from a district court's grant of summary judgment, our review is *de novo,* and we view the evidence in the light most favorable to the non-moving party. *See Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 132 (2d Cir.1999). Summary judgment is properly granted only when there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fagan,* 186 F.3d at 132. " 'Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.' " *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000) (quoting *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991)).

The district court granted summary judgment holding there was no triable issue of fact because, once the employer had given a nondiscriminatory reason for James's termination, James failed to adduce evidence capable of supporting an inference of discrimination. In making this ruling, the district court followed the test we had approved in *Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997) (*in banc* ), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). We believe that the district court applied *Fisher* properly. Thus, if our ruling in *Fisher* remains good law, we must uphold the district court.

We agree with the district court that the evidence, taken as a whole, cannot reasonably support an inference that James's discharge was motivated by age-based animus. The evidence that NYRA was engaged in a bona fide reduction in force, motivated by the need to save large amounts of operating costs so as to avoid bankruptcy, was overwhelming. There was also very substantial uncontradicted evidence that NYRA did not discriminate against older workers, including its recent hire of a 66 year-old President and a 67

year-old Security Director, and its recent promotion of James with a 30 percent raise. *See Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir.1997), *cert. denied,* 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998) (noting that it is difficult to impute bias against plaintiff's protected class where the actor who made the adverse employment decision against plaintiff also made a recent favorable employment decision regarding plaintiff). And while James cited jokes referring to aging, none of them ridiculed or disparaged aging or in any way showed discriminatory animus against older workers.

■ Finally, in the context of the precarious financial position of NYRA, the remarks James proffered about saving NYRA for younger employees and about the need for older supervisors to retire clearly represented the hope that over time the older personnel would retire, and thereby reduce the high costs associated with more senior supervisory employees. Such concern with the elevated costs of senior employees does not constitute age discrimination. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (holding that ADEA does not prohibit employers from acting out of concern for cost, even if cost arises from age-related facts); *Woroski v. Nashua Corp.,* 31 F.3d 105, 109 n. 2 (2d Cir.1994) (same). Indeed, we have specifically recognized a safe-harbor for employer intent to cause early retirement. *See Fagan,* 186 F.3d at 133 ("The ADEA creates a safe harbor for voluntary early retirement plans that are consistent with the ... purposes of the ADEA ....") (internal quotation marks omitted). In any event, taking the evidence in the record as a whole, it is clear that there was insufficient evidence to support a rational finding of age discrimination.

On the other hand, plaintiff's evidence showed that he was over 40 years old, that he was qualified for his job, and that he was dismissed while younger persons were not. In addition, the plaintiff proffered evidence that could permit a finder of fact to conclude that the employer's given reason—downsizing—could not adequately explain his removal and might therefore be false. If these elements are sufficient as a matter of law to require that the case go to the jury, notwithstanding the lack of sufficient evidence to support a reasonable finding of prohibited discrimination, then we may be obligated to overturn the grant of summary judgment.

In *Fisher,* we focused on the framework for evaluating claims of employment discrimination set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). We convened *in banc* in *Fisher* to reconsider our earlier precedent in *Binder v. Long Island Lighting Co.,* 57 F.3d 193 (2d Cir.1995). In *Binder,* we had ruled that evidence satisfying *McDonnell Douglas*'s minimal requirements of a prima facie case, coupled with evidence from which a factfinder could find that the employer's explanation for the action it took against plaintiff was false, necessarily mandates submission of the case to the jury and the upholding of a plaintiff's verdict, regardless whether the evidence in the case gives reasonable support to the plaintiff's claim that the employer's motives were discriminatory. *Fisher* rejected the *Binder* standard, finding it both illogical and incompatible with the Supreme Court's guidance. We read the Supreme Court's explanations in *Burdine* and *St. Mary's* as having mandated the following mode of analysis as the case progresses:

■ At the outset, a plaintiff can avoid dismissal by presenting the "minimal" prima facie case defined by the Supreme Court in *McDonnell Douglas.* This requires no evidence of discrimination. It is satisfied by a showing of

"membership in a protected class, qualification for the position, an adverse employment action," and preference for a person not of the protected class. *Fisher*, 114 F.3d at 1335; *see McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. By making out this "minimal" prima facie case, even without evidence of discrimination, the plaintiff "creates a presumption that the employer unlawfully discriminated," *Fisher*, 114 F.3d at 1335 (internal quotation marks omitted), and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action. If the defendant fails to discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail (assuming the other aspects of the prima facie case are not contested). Thus, aided by the *McDonnell Douglas* presumption, which is designed to force employers to come forward with reasons, a plaintiff who proves the minimal prima facie case is entitled to prevail as a matter of law even without evidence that would support a reasonable finding of discriminatory motivation, if the employer does not come forward with a reason. *See St. Mary's*, 509 U.S. at 506–10, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Fisher*, 114 F.3d at 1335.

On the other hand, once the employer "articulates a non-discriminatory reason" for its actions, *Fisher*, 114 F.3d at 1336, the presumption completely "drops out of the picture." *St. Mary's*, 509 U.S. at 510–11, 113 S.Ct. 2742. " '[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated ... remains at all times with the plaintiff.' " *St. Mary's*, 509 U.S. at 507, 113 S.Ct. 2742 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment (or to the overturning of a plaintiff's verdict) unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. *See St. Mary's*, 509 U.S. at 510–11, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 255–56, 101 S.Ct. 1089; *Fisher*, 114 F.3d at 1336. In sum, our holding in *Fisher* was that once the employer has proffered a reason for its action, all presumptions and special rules drop away; a case under Title VII becomes like any other case in that the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim.

We rejected *Binder* not only because we found it inconsistent with the Supreme Court's teachings, but also because it would illogically permit a plaintiff to prevail notwithstanding the absence of evidence capable of supporting a finding of discrimination. The requirements of the *McDonnell Douglas* prima facie case are so minimal that they do not necessarily support any inference of discrimination; and there are so many reasons why employers give false reasons for an adverse employment action that evidence contradicting the employer's given reason—without more—does not necessarily give logical support to an inference of discrimination. We recognized that in some circumstances the prima facie case and/or evidence of falsity might give powerful evidence of discrimination—more than enough to sustain a plaintiff's verdict—but in others, the two together might fall far short of providing evidence from which a reasonable inference of discrimination could be drawn.

We therefore rejected the artificial rule of *Binder* that automatically deemed plaintiff's case sufficient if it satisfied the minimal *McDonnell Douglas* standard and contained evidence of falsity of the employer's reason. We ruled instead that the standard for determining whether the evidence was sufficient to sustain the submission of plaintiff's case to the jury was simply whether on the basis of that evidence, a factfinder could reasonably find the essential elements of a case of discrimination. The essential point of our ruling was that employers should not be held liable for discrimination in the absence of

evidence supporting a reasonable finding of discrimination.[1]

To resolve whether the district court properly granted summary judgment, we must consider whether the rule we adopted in *Fisher* has been overturned by the Supreme Court's recent decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). We conclude that the Supreme Court's reasoning in *Reeves* is wholly compatible and harmonious with our reasoning in *Fisher*. There is no inconsistency between the two rulings.

It is important to recognize at the outset that the question before the Supreme Court in *Reeves* was the opposite of the one we faced in *Fisher*. While the *Binder* rule we considered in *Fisher* was that a *McDonnell Douglas* prima facie case plus evidence of falsity is *necessarily sufficient* to take the case to the jury, the Fifth Circuit ruled in *Reeves* that those elements are *necessarily insufficient* to take the case to the jury. On the Fifth Circuit's view in *Reeves*, under a rule often described as "pretext plus," some additional evidence is always required: As described by the Supreme Court, under the Fifth Circuit's rule "a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's" explanation, was "insufficient as a matter of law to sustain a jury's

finding of intentional discrimination." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2108. The Supreme Court rejected the Fifth Circuit's position that a prima facie case, plus evidence of falsity, is *never* sufficient for approximately the same reasons that we in *Fisher* had rejected the *Binder* rule that a prima facie case plus evidence of falsity is *always* sufficient. *See id.* The Court stated that "because a prima facie case and sufficient evidence to reject the employer's explanation *may permit* a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff *must always* introduce additional, independent evidence of discrimination." *Id.* at ——, 120 S.Ct. at 2109 (emphases added).

■■■■■ We reasoned in *Fisher* that "evidence constituting a prima facie case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may—or may not—be sufficient to show illegal discrimination." *Fisher*, 114 F.3d at 1333. In nearly identical terms the Supreme Court explained in *Reeves* that in some circumstances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred, and thus that a plaintiff may, under those circumstances, reach the jury on this evidence and without additional evidence, but that in other circumstances,

---

1. The problem with *Binder* is best illustrated by a simple hypothetical. Suppose the following facts: A qualified employee is fired and brings suit claiming discrimination. The plaintiff (like every living being) belongs to many protected classes, being male or female, and being associated with some race or races, some religious background or identification, and some national origin. A replacement is hired whose membership in protected classes is not identical to plaintiff's. The employer explains that the plaintiff was fired for speaking in insubordinate terms to a supervisor. The plaintiff then denies having used the offensive language. There is no further evidence in the case.

On such evidence, a factfinder could not reasonably find discrimination. There is no evidence to support such a finding. Never-

theless, the rule of *Binder* would require that the case go to the jury and would bar overturning a plaintiff's verdict as a matter of law under Rule 50, Fed.R.Civ.P. The evidence satisfies the minimal standards for the *McDonnell Douglas* prima facie case, *see McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, and there is evidence from which the jury could infer falsity of the employer's explanation. Thus the *Binder* standard is satisfied. If that were enough, courts would be obligated to enter judgments finding employers liable for discrimination where there was no discrimination and no evidence of discrimination. The *Fisher* rule was based on the illogicality of that result. It requires a plaintiff to point to evidence that can reasonably support a finding of discrimination.

a prima facie case, combined with falsity of the employer's explanation, will not be sufficient:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." In other words, "[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."
>
> . . . .
>
> This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

*Reeves*, 530 U.S. at —— – ——, 120 S.Ct. at 2108–09 (quoting *St. Mary's*, 509 U.S. at 524, 519, 113 S.Ct. 2742) (alteration in *Reeves*; citations omitted). As we understand the Court's *Reeves* opinion, once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the *McDonnell Douglas*

presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred. Another panel of our court recently examined *Reeves* and reached the same conclusion—that it "mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106). The relevant factors identified by the Supreme Court "include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2109.[2] Our reasoning in *Fisher* was the same. In conclusion, upon careful study of the *Reeves* opinion, we can find no indication in it that the Supreme Court has rejected what we said in *Fisher*.[3] We believe that both opinions essentially stand for the same propositions—(i) evidence satisfying the minimal *McDonnell Douglas* prima facie case, coupled with evidence of

**2.** It is noteworthy that in *Reeves*, although the plaintiff had made out a *McDonnell Douglas* prima facie case and submitted evidence of falsity of the employer's explanation, the Court based its decision to reverse the post-trial grant of judgment as a matter of law to the employer not on the satisfaction of those elements but rather on the fact that the record contained additional evidence that would reasonably sustain a finding of discrimination. *See Reeves*, 530 U.S. at —— – ——, 120 S.Ct. at 2110–12.

**3.** As the *Schnabel* opinion points out, *see Schnabel*, 232 F.3d at 89 n. 5, the Supreme Court in *Reeves* introduced some confusion as to the meaning of the *Fisher* opinion. The Court stated that it was granting certiorari to resolve the conflict among circuits as to whether a prima facie case plus evidence of the falsity of the employer's proffered justification is adequate to sustain a finding of

liability. In a parenthetical clause following its citation to *Fisher*, the Court described *Fisher* as requiring that plaintiffs "introduce sufficient evidence for jury to find both that employer's reason was false *and* that real reason was discrimination." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2105 (emphasis added). With all respect the Court was mistaken. *Fisher* does not require evidence that the employer's reason was false. It requires only evidence adequately supporting a finding of discrimination. As we have explained here, *Fisher* (like *Reeves*) states that evidence satisfying the minimal *McDonnell Douglas* prima facie case, combined with evidence of the falsity of the employer's explanation, may or may not be sufficient to sustain a finding of discrimination, and that whether such evidence is sufficient to sustain a finding of discrimination in any given case turns on analysis of the particular evidence in the case.

falsity of the employer's explanation, may or may not be sufficient to sustain a finding of discrimination; (ii) once the employer has given an explanation, there is no arbitrary rule or presumption as to sufficiency; (iii) the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination. *Reeves* impliedly rejects the *Binder* proposition—that evidence satisfying *McDonnell Douglas*'s minimal requirements of a prima facie case plus evidence from which a factfinder could find that the employer's explanation was false necessarily requires submission to the jury.

■■■ Applying the *Reeves/Fisher* standard to James's case, we must affirm. It is true James satisfied the minimal *McDonnell Douglas* standard for a prima facie case and offered evidence that arguably would allow a reasonable factfinder to conclude that NYRA's explanation of downsizing is false. *Cf. Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) (noting that evidence that an employee was replaced shortly after discharge undermines explanation of downsizing or reduction-in-force). If the standard were the rule set out in *Binder,* we might be forced to vacate the district court's grant of summary judgment and remand for a jury trial. But under *Reeves* and *Fisher,* the test for summary judgment is whether the evidence can reasonably support a verdict in plaintiff's favor. Because James's evidence was insufficient to permit a reasonable trier of fact to find that age discrimination was the reason for his discharge from NYRA, we must affirm the grant of summary judgment in defendant's favor. As we have considered all of James's other contentions and find them to be meritless, we hold that summary judgment for NYRA was properly granted.

*CONCLUSION*

The judgment of the district court is hereby AFFIRMED.