**Barry EPSTEIN, Plaintiff,**

v.

**TRITON ADVERTISING, INC. and Robert J.S. Friedmann, Defendants.**

**No. 00 Civ. 0350 CBM.**

United States District Court, S.D. New York.

Dec. 7, 2000.

Arthur M. Peslak, Mandel & Peslak, L.L.C., Freehold, NJ, for plaintiff.

William J. Davis, Scheicht & Davis, P.C., New York, NY, for defendants.

### MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Barry Epstein filed this action on January 14, 2000 against defendants, Triton Advertising, Inc. ("Triton") and Robert J.S. Friedmann ("Robert Friedmann"), alleging age discrimination in violation of New York State Executive Law and New York State Civil Rights Law (count I), unlawful discriminatory practices in violation of the New York City Administrative Code (count II), and failure to pay money owed on a book account (count III). Plaintiff also alleges a retaliation claim against defendants and aiding and abetting against Robert Friedmann. Plaintiff seeks damages, punitive damages, and other relief. Defendants filed their answer and counterclaim on March 8, 2000 alleging conversion and claiming damages of $20,-868.93.

Defendants now move for partial summary judgment dismissing counts I and II of the complaint. For the reasons set forth below, this court DENIES defendants' motion.

## I. BACKGROUND[1]

Plaintiff was employed by defendant Triton for approximately 31 years. Triton is a small advertising agency in New York City which was founded by defendant Robert Friedmann approximately 52 years ago. Triton's officers include its president, Robert Friedmann, his brother Peter Friedmann, serving as executive vice president and production manager, and William Hofstetter, who serves as vice president, account executive, and business manager.

At the time of his termination, plaintiff's position was vice president creative services and senior art director. In addition to his responsibilities as an account executive for certain clients, plaintiff also provided creative services for all of the other principals at Triton. In the last few years of his employment, plaintiff worked principally as the account executive in charge of the Pentel of America, Inc. account ("Pentel account"), which was one of the most important and profitable of Triton's clients.

Plaintiff states that during the first half of 1998, Peter Friedmann approached plaintiff with a proposal for Epstein to take over as president of Triton. Peter Friedmann indicated that he was contemplating retirement at the time. When Robert Friedmann found out about the proposal, he refused to consent and Peter Friedmann withdrew the proposal. Plaintiff states that after Peter Friedmann's

---

1. Unless otherwise indicated, the following background is drawn from the statements of facts provided in both plaintiff's and defendants' moving papers.

proposal was withdrawn, he became concerned about Triton's continued viability because of Peter Friedmann's pending retirement and because the lease on Triton's office space was expiring in late 1998. These concerns prompted plaintiff to request a salary increase.

Plaintiff represented in a letter to Robert Friedmann dated July 12, 1998 that his annual compensation in 1998 was approximately $107,500. *See* Def.'s Ex. 2. Plaintiff states that he asked for a larger salary and assurances from Robert Friedmann that Triton would not interfere with plaintiff's ability to leave Triton with the Pentel account, especially if Triton were to be taken over by another agency.

According to defendants, in the middle of 1998, when Triton was moving offices, plaintiff told Robert Friedmann that he would quit his employment and take the Pentel account with him unless he received a salary increase and equity ownership in Triton. After negotiations, Robert Friedmann agreed to increase plaintiff's salary to $150,000 and stated an expectation of providing an equity ownership to plaintiff over a period of years. Robert Friedmann did not tell the other Triton officers about plaintiff's salary increase.

In December 1998, Triton learned that the Pental advertisements intended for insertion in the 1999 Office Depot catalog had been mistakenly inserted into the Corporate Express catalog directing Corporate Express customers to contact Office Depot for their purchases of Pentel supplies. This mistake was apparently caused by a mix-up of materials which were sent by Federal Express on the same day to both Corporate Express and Office Depot. Both Pentel and Office Depot were upset about this mistake, and plaintiff wrote an apologetic letter to the executive vice president of Pentel in an effort to hold on to the account.

After the Pentel mistake was brought to Triton's attention, a meeting was held among Robert Friedmann, Peter Friedmann, and Hofstetter to discuss contingency plans if Pentel pulled its account. At this meeting, Robert Friedmann informed his brother and Hofstetter of plaintiff's salary increase which had been approved the preceding summer. Peter Friedmann and Hofstetter were upset at learning of plaintiff's salary increase and Hofstetter suggested that if Triton lost the Pentel account plaintiff should be terminated.

In January 1999, Pentel sent Robert Friedmann a letter describing the serious problem caused by the switching of the catalog ads and seeking participation from Triton in a $2,600,000 settlement which Pentel was negotiating with Corporate Express. Triton referred that request to its lawyers and the matter is still pending.

In May 1999, Pentel sent a letter to Triton advising it that Pentel would no longer continue as a Triton client. Upon receiving that letter, Triton's officers decided to fire plaintiff. Within a few weeks, plaintiff was fired and was told that it was because Triton could no longer afford to employ him now that the Pentel account was gone.

Plaintiff states that although defendants now assert that they fired him because of cash-flow problems, plaintiff offered to reduce his salary by about 50%. Plaintiff also states that Triton had never before responded to losing an account by firing that account's account executive.

Plaintiff was fired on June 9, 1999. Within a few days of firing plaintiff, defendants hired 29 year-old Jennifer Levi as an art director. Plaintiff states that Levi replaced him. Defendants state that Levi was hired to replace a free-lance art director named Kent Wilkerson and assist Eric Friedmann, Peter Friedmann's son, on the Shoes for Cruise account, as well as on other matters. Plaintiff states that defendants pay Levi $60,000 per annum.

Plaintiff also states that he was replaced by Eric Friedmann. In or about September 1998, Peter Friedmann began talking to his son, Eric Friedmann about joining

Triton and taking over Peter Friedmann's Shoes for Cruise account work during the time that Peter Friedmann was going to take a sabbatical in 1999. Having had no experience in the advertising business, Eric Friedmann began working with his father at Triton in January 1999 to learn about the business and his father's accounts, and he later became the account executive for the Shoes for Cruise account.

Plaintiff states that Eric Friedmann is now either an art director or a creative director at Triton. Shortly after joining Triton, plaintiff states that Eric Friedmann began taking over plaintiff's job responsibilities, for instance, taking over the creative work for the Treasure Island account. Plaintiff also states that contrary to defendants' assertion that they decided to fire him in May 1999, Robert Friedmann testified at his deposition that the decision was actually made in January or February of 1999 around the time that Eric Friedmann was hired. Plaintiff states that Triton was paying Eric Friedmann $45,000 per annum.

According to defendants, neither Eric Friedmann nor Jennifer Levi have replaced plaintiff because neither has ever worked on Pentel advertising.

After firing plaintiff, Triton allowed plaintiff to work on a free-lance basis for the account executives remaining at Triton. Plaintiff was compensated on an hourly basis for this work. During this time, plaintiff alleges that Hofstetter told him on one occasion that he was "too old." According to plaintiff's deposition, while discussing a recent job interview with Hofstetter, plaintiff asked Hofstetter: "Do you know what they [the prospective employer] said to me?" Hofstetter replied: "You're too old?" Plaintiff then answered, "No, they said I've got a lot of talent." See Peslak Decl.Ex. 13, Epstein Dep. at 155.

After Triton received notice of plaintiff's complaint of age discrimination before the New York State Department of Human Rights, Triton refused to pay plaintiff for free-lance work he had performed and billed to Triton.

## II. DISCUSSION

Defendants seek summary judgment of counts I and II of plaintiff's complaint: (1) age discrimination in violation of New York State Executive Law, article 15, sections 296 and 297.9 and New York State Civil Rights Law, sections 40b and 40c; and (2) unlawful discriminatory practices in violation of the New York City Administrative Code, title 8, section 8–502.

Summary judgment is properly granted only when there is no genuine issue as to any material fact. See FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on such a motion, the district court is to view the evidence in the light most favorable to the party opposing the motion. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See, e.g., Brady v. Town of Colchester, 863 F.2d 205, 210–11 (2d Cir.1988). "'Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.'" White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (quoting Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir. 1991)).

■ Although the plaintiff bases his case on New York state law, rather than the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the substantive law and applicable standards are the same under both the ADEA and New York law. See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n. 4 (2d Cir.1995), abrogated on other grounds by Burlington Ind. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Miller Brewing Co. v. State Div. of

*Human Rights,* 66 N.Y.2d 937, 938–39, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985). Claims of age discrimination of analyzed under the same burden-shifting analysis prescribed for Title VII cases. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Taggart,* 924 F.2d at 46.

Under this burden-shifting analysis, the plaintiff "can avoid dismissal by presenting the 'minimal' prima facie case.... This requires no evidence of discrimination." *James v. New York Racing Ass'n,* 233 F.3d 149, 153 (2d Cir.2000). The plaintiff is only required to show that: (1) he was in the protected age group; (2) he was qualified for his position; (3) he was discharged; and (4) a preference for a person not in the protected class, or, circumstances giving rise to an inference of unlawful age discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, ——, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *James,* 233 F.3d at 153; *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000). Upon making this showing, plaintiff "creates a presumption that the employer unlawfully discriminated." *James,* 233 F.3d at 154 (*quoting Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir. 1997) (en banc), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)).

After plaintiff makes out a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination. If defendant does so, the presumption completely "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At this point, "the governing standard is simply whether the evidence, taken on the whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James,* 233 F.3d at 154. In the Supreme Court's recent age discrimination case, *Reeves v. Sanderson Plumbing Products, Inc.,* the Court "mandate[d] a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel,* 232 F.3d at 90 (*quoting Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106). The relevant factors for the court to consider "include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or detracts from] the employer's case." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2109.

■ This court finds that plaintiff has satisfied its minimal burden of establishing a prima facie case. Plaintiff is a member of a protected class; his thirty-plus years of employment with defendant Triton and the substantial raise he received just one year before his termination speak to plaintiff's qualifications for his position; he was terminated; and at least one person, Jennifer Levi, who is not a member of the protected class was hired within days of plaintiff's termination and took over some of his job responsibilities.

This court also finds that defendants have satisfied their burden of production in providing the loss of the Pentel account and Triton's cash-flow problems as a legitimate, non-discriminatory reason for plaintiff's termination. However, this court finds that the evidence as a whole is sufficient for a reasonable trier of fact to infer the occurrence of prohibited age discrimination. It is true that a jury could find that the loss of the Pentel account was the motivation behind defendants' decision to fire plaintiff. However, this court believes that a jury could also reasonably find that the decision to terminate plaintiff was motivated by the desire to replace an older employee. The evidence which plaintiff has advanced to support this view, and which this court must consider favorably in deciding this motion, includes the following: (1) plaintiff had worked on numerous accounts during his thirty years with Tri-

ton and was not exclusively tied to the Pentel account, despite the fact that it was his primary focus at the time of his termination; (2) beyond the Pentel account, plaintiff provided other services and had other responsibilities at Triton; (3) of these other services and responsibilities, many have been assigned to Eric Friedmann and Jennifer Levi since plaintiff's departure from Triton; (4) in response to defendants' assertions that Triton could not afford to pay plaintiff after the loss of the Pentel account, plaintiff offered to accept a reduction in his salary; however, defendants declined this offer; and (5) defendants had accepted plaintiff's offers to accept salary reductions in the past when experiencing cash-flow problems.

## III. CONCLUSION

Because a reasonable trier of fact could conclude that defendants' stated legitimate, non-discriminatory reason for firing plaintiff was a pretext for age discrimination, this court DENIES defendants' partial motion for summary judgment seeking dismissal of counts I and II of the complaint.