Kirk **ALLEN**, Plaintiff,

v.

Sherrill **MURRAY–LAZARUS**, Richard Powell, and Wappinger Central School District, Defendants.

No. 08–CV–1310–WGY.

United States District Court, S.D. New York.

Dec. 6, 2010.

Michael Howard Sussman, Sussman & Watkins, Goshen, NY, for Plaintiff.

Vincent Paul D'Andrea, Sr., Donoghue, Thomas, Auslander & Drohan, Scarsdale, NY, for Defendants.

**Memorandum and Order**

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

The plaintiff, Kirk Allen ("Allen"), is seeking damages from the defendants, Wappinger Central School District (the "District"), Sherrill Murray–Lazarus ("Lazarus"), the principal of Roy C. Ketcham High School (the "School"), and Richard Powell ("Powell"), the superintendent of the District (collectively the "Defendants"). Allen alleges that he was terminated from his job as a math and business teacher at the School because of his race. The Defendants have filed a motion for summary judgment.

### A. Procedural Posture

Allen initiated this case on February 8, 2008. Discovery was completed in September 2009. The Defendants filed the present motion for summary judgment on January 13, 2010, The Court held oral argument on this motion on November 16, 2010, and took the matter under advisement.

### B. Facts [2]

Allen is an African–American male. Pl.'s Counter–Statement ¶ 1, ECF No. 26 ("Counter–Statement").[3] Beginning in the 2006–07 school year, Allen was employed as a high school math and business teacher at the School. Id. ¶ 5. Powell, the superintendent of the District, recommended that the school board hire Allen based on the recommendation of Marilyn Kovarik ("Kovarik"), the coordinator of the math and business department. See Pl.'s Resp. Def.'s Statement Allegedly Undisputed Material Facts, ¶ 3, ECF No. 26 ("Pl.'s Resp."). Allen was one of two African–American teachers employed at the School.

---

1. Of the District of Massachusetts, sitting by designation.

2. For the purpose of this summary judgment motion, the factual summary presented here consists of undisputed facts and disputed facts in the light most favorable to Allen, the non-moving party. The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party—even if uncontradicted—that the jury would be free to disbelieve. *See id.*

3. In response to the Defendants' Rule 56.1 statement of undisputed facts, Allen made a single filing that included two separately numbered segments: "Plaintiff's Response to Defendants' State of Allegedly Undisputed Material Facts" and "Plaintiff's Counter–Statement," *See* ECF No. 26. For ease of locating the relevant factual material, this Court will cite these segments separately, though both are found under the same Electronic Case Filing reference number.

Counter–Statement ¶ 9. Evaluations of Allen's teaching performed in October and December, 2006, and March 2007, noted Allen's performance as satisfactory. *Id.* ¶¶ 15–16.

At all relevant times, Lazarus served as the principal of the School. *Id.* ¶ 10. Early in the school year, Allen perceived that Lazarus was treating him negatively relative to his white coworkers. *Id.* ¶ 11. He testified at his deposition that Lazarus criticized him for the manner in which he worked with students during his hall duty and for his manner of dress, while he observed her making no such criticisms of white teachers who acted in the same way. *Id.* ¶¶ 12–14.

In March 2007, in the last five minutes of one of his teaching periods, Allen took his class to the cafeteria, where he believed he would find a student who was cutting his class. Pl.'s Reap. ¶ 4. In the cafeteria, Allen stood on a table and reprimanded the cutting student in front of the rest of his class. *Id.* Lazarus spoke with Allen about this method of attempting to alter student behavior but did not discipline or formally counsel him regarding the incident. *Id.* ¶ 5.

In May 2007, a publication issued by the New York Teachers' Union decided to publish a profile of Allen. Counter–Statement ¶ 19. In connection with this profile, the publication told Allen that it wished to send a photographer to his school to take photographs of him with his class. *Id.* ¶ 18. Allen informed members of his department and security personnel that the photographer would be coming. *Id.* Allen sought and received the consent of each of his student's parents to have the children in the photographs. *Id.* ¶ 21. Allen did not seek permission from the school administration but believed that he had complied with school protocol regarding the photographer. *Id.* ¶ 23.

On May 11, shortly after the day the photographer came, Lazarus reprimanded Allen for allowing the photographer into his classroom and informed him that he would receive a "counseling letter" regarding the incident. *Id.* Later that day, Lazarus informed a union representative that she planned to have Allen dismissed as a result of the photographer incident. *Id.* ¶ 24. Lazarus informed Allen of her intention to have him dismissed at a meeting on May 24, 2007. *Id.* ¶ 26. At the meeting, Lazarus also claimed that Allen had been soliciting sales for a new book he had authored by announcing a book signing he would be performing. *Id.* ¶ 27. Allen claims that Lazarus had previously encouraged him to announce the book signing to the school community. *Id.* ¶ 23.

On June 7, 2007, Lazarus and Kovarik met with Allen and presented him with an unsatisfactory end-of-year performance evaluation. *Id.* ¶¶ 29–30. Allen contested each adverse statement in the evaluation in a written rebuttal. *See* Affirmation Michael H. Sussman ("Sussman Affirmation"), Ex. 14, ECF No. 16–15. He claims that this negative evaluation was a result of racial bias against him. Counter–Statement ¶ 32.

Lazarus recommended Allen's termination to Powell, *Id.* ¶ 33. Powell relied on his staff in making decisions and formulating reasons regarding the termination of Allen. *Id.* On June 5, 2007, Powell sent a letter to Allen listing four reasons for his recommended termination: three of the reasons related to the photographer incident and one related to the cafeteria incident. *See* Sussman Affirmation, Ex. 16, ECF No. 16–17. On June 13, 2007, before the school board took any action on Powell's recommendation that Allen be terminated, Allen submitted a letter of resignation to the District. Def.'s Rule 56.1 Statement Material Facts ¶ 32, ECF No.

22. The school board accepted Allen's resignation on June 25, 2007, *Id.* ¶ 34.

## II. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c)(2). In reviewing the evidence advanced by the parties, this Court must "revolv[e] all ambiguities and draw[ ] all permissible inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir.2010) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.2009)).

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff in an intentional discrimination case bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817, The burden of going forward then shifts to the defendant to present a legitimate non-discriminatory reason for the termination. *Id.* Finally, the plaintiff is afforded an opportunity to show that the asserted non-discriminatory reason is merely a pretext for unlawful discrimination.[4] *Id.* at 804, 93 S.Ct. 1817. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

### B. Prima Facie Discrimination

In order to establish a prima facie case of intentional discrimination, Allen must present evidence from which a reasonable jury could find four elements: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir.2008).

In attempting to establish circumstances giving rise to an inference of discriminatory intent, Allen relies entirely on two pieces of evidence. First, he relies on

**4.** The Court rules that the evidence Allen presents is insufficient as matter of law to establish a prima facie case of intentional racial discrimination, so it need not reach the issue of pretext. Because Allen's counsel, however, focused his arguments in his memorandum and at oral argument on pretext, the Court makes two brief notes.

First, evidence of pretext is not a substitute for a showing of prima facie discrimination. The *McDonnell Douglas* burden-shifting analysis is sequential in nature, so when a plaintiff is unable to show circumstances giving rise to a plausible inference of discrimination, evidence of pretext is irrelevant.

Second, although bare evidence of pretext can be sufficient for a jury to conclude that discrimination was the true reason for the adverse action, *see James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155 (2d Cir.2000) (noting that the Supreme Court in *Reeves*, 530 U.S. 133, 120 S.Ct. 2097, rejected the "pretext plus" approach which required a plaintiff to adduce additional evidence beyond showing the falsity of the defendant's claimed non-discriminatory reason), the plaintiff must ultimately establish by a fair preponderance of the evidence that the defendant's asserted reason was a pretext *for discrimination*. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir.2009). Evidence of the prima facie case can assist in meeting this burden, but where, as here, the plaintiff has not presented sufficient evidence to establish a prima facie case, a showing of pretext for discrimination would fail as well.

his own testimony that at the beginning of the school year, Lazarus criticized the way he conducted himself during hall duty and the way he dressed but that he did not observe Lazarus criticize white teachers for acting in a similar way. Second, he relies on evidence that the District employs few African–American teachers and points to statistics from a neighboring school district which employs more African–American teachers to argue that this is evidence of discrimination by the District.

These two pieces of evidence are not sufficient to satisfy Allen's burden of establishing a prima facie case of racial discrimination. Although Allen states that Lazarus criticized him more than she did white teachers, this criticism did not lead to any discipline. He is also very vague about the nature of this criticism and does not present any evidence—even from his own testimony—that any of this criticism was cast in racially derogatory terms. In fact, no evidence indicates that Lazarus, Powell, or anyone else at the School or District ever mentioned Allen's race during his employment. Moreover, the criticism that Allen alleges was racially motivated took place at the beginning of the school year, months before Allen alleges that the decision to terminate him was made.

■ The alleged race-based criticisms were also unrelated to the District's asserted reasons for his termination. Allen presents no evidence of white teachers similarly situated to him—that is, white teachers who engaged in conduct similar to the cafeteria and photographer incidents—who were not terminated. *See Ruiz v. County of Rockland,* 609 F.3d 486, 493–94 (2d Cir.2010) (noting that a showing of the disparate treatment of similarly situated individuals is a recognized method of showing circumstances that may give rise to an inference of discrimination).

The employment statistics presented by Allen add little to his prima facie showing of intentional racial discrimination relating to his termination. Allen asserts that less than 1% of the administrators and faculty employed by the District were African–American. He contrasts this with the neighboring Poughkeepsie school district, in which 20–25% of administrators and faculty were African–American. *See* Counter–Statement ¶ 48.

■ It is true that statistical evidence is often probative in cases alleging intentional discrimination. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 339 n. 20, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("Statistics showing racial or ethnic imbalance are probative in [an intentional discrimination case] only because such imbalance is often a telltale sign of purposeful discrimination."). The statistics adduced here, however, do little to advance Allen's claim for several reasons. First, Allen presents no evidence of the relative racial compositions of the populations or teacher applicant pools of the Wappinger Central and Poughkeepsie school districts. Without such additional data, no meaningful inferences can be drawn from the comparison presented. Second, the statistics in this case do not bear on the central claim of Allen's case: that Lazarus intentionally discriminated against him in recommending his termination. It would be unreasonable to impute discriminatory intent to the principal of a single school based on the districtwide employment statistics adduced by Allen. Third, and related to the second point, Allen's claim relates to *termination* whereas his statistical evidence relates to *employment.* He presents no statistical evidence regarding the number of terminations carried out by the District or School or the race of any terminated employees.

486

With such minimal evidence of any racial bias by Lazarus—none of which was temporally or concretely connected to Allen's termination—and statistical evidence that is at most tangentially related to Allen's claim, no reasonable jury could conclude that Lazarus recommended Allen's termination as a result of his race.

## C. Respondeat Superior

■ Although Allen's allegations are focused on the alleged discriminatory intent of Lazarus, he also advances a claim against Powell, the superintendent. In order to be held liable for damages under 42 U.S.C. section 1983, an individual must have been personally involved in the alleged constitutional violation. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir.2004). Here, Allen has presented no evidence that Powell was engaged in any racial discrimination. In fact, Allen admits that Powell relied on his staff in the decision to terminate Allen and "had no direct knowledge of any of the matters." Counter–Statement ¶ 33. With this utter lack of evidence, no reasonable jury could find for Allen on his claim against Powell.

## D. Policy, Practice, and Custom

■ Similarly, as a municipal defendant, the District cannot be held liable under Section 1983 for the acts of its agents. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to hold the District liable under Section 1983, Allen must show that the District had a policy, practice, or custom of discriminating against black teachers, and that such a policy caused his termination. *See id.* at 694, 98 S.Ct. 2018.

■ The only evidence that is relevant to the issue of whether such a policy existed is Allen's evidence that the District employed fewer black teachers than the neighboring Poughkeepsie School District. Although this statistical evidence is more probative of an alleged district-wide policy than of intentional discrimination on the part of Lazarus, *see supra,* it is not sufficient here to sustain Allen's claim against the District. As discussed above, the statistics are presented here in a vacuum, devoid of other information, which renders it impossible to draw meaningful inferences of District policy from them. Moreover, the very fact that the District hired Allen just one year before his termination strongly suggests that such a policy or custom of racial discrimination does not exist. *Cf. Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."). Finally, Allen presents no evidence that his termination was caused by any District policy. Allen's allegations center entirely on the conduct of Lazarus with no reference to how her allegedly discriminatory actions were informed by or pursuant to any District policy.

No reasonable jury could conclude from the evidence adduced by Allen that the District had a policy or custom of discriminating against African–American employees and that Allen was terminated pursuant to such a policy.

## III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment, ECF No. 19, is ALLOWED. Judgment shall enter for the Defendants.

**SO ORDERED.**