*Puleo v. Masonic Med. Rsch. Inst.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of January, two thousand twenty-five.

PRESENT:
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

———————————————————————————

COLLEEN T. PULEO,

> *Plaintiff-Appellant*,

> v.                                                                No. 23-7589

MASONIC MEDICAL RESEARCH INSTITUTE, JOHN S. ZIELINSKI, MARIA I. KONTARIDIS,

> *Defendants-Appellees.*

———————————————————————————

| For Plaintiff-Appellant: | ZACHARY C. OREN, Law Office of Zachary C. Oren, Utica, NY. |
|---|---|
| For Defendants-Appellees: | HANNAH K. REDMOND (Adam P. Mastroleo, *on the brief*), Bond, Schoeneck & King PLLC, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 28, 2023 judgment of the district court is **AFFIRMED**.

Colleen T. Puleo appeals from the district court's grant of summary judgment in favor of her former employer, Masonic Medical Research Institute ("MMRI"), its chief financial officer, and director of research (together, "Defendants") on her claims that she was fired from her position at Defendants' animal-testing laboratory on account of her sex and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*, the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621, *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.[1]   We

---

[1] Puleo does not appeal the district court's dismissal of her related retaliation claims.

assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment *de novo* and view the evidence in the light most favorable to the non-moving party below. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 152 (2d Cir. 2000). Summary judgment is appropriate "only when there is no genuine issue as to any material fact." *Id.* A dispute is "genuine" when the evidence on the issue "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

## I. Title VII Sex Discrimination

When assessing a claim for sex discrimination under Title VII, we apply the familiar three-step *McDonnell Douglas* burden-shifting framework. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to Title VII claims). To start, the plaintiff must "establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (internal

3

quotation marks omitted).   If "the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action."   *Id.* (internal quotation marks omitted).   If the employer articulates such a reason, then the burden shifts back to the plaintiff to show at the third step either "that the employer's stated justification for its adverse action was nothing but a pretext for discrimination" or "that[] even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action."   *Id.* at 567.

The district court below expressed skepticism that Puleo had established a *prima facie* case of sex discrimination.   But even assuming that Puleo had made such a case, the court determined that she failed to carry her burden at step three of the *McDonnell Douglas* framework.   We agree.

With respect to Puleo's sex discrimination claims, Defendants asserted two legitimate, nondiscriminatory reasons for terminating her from the animal laboratory – (1) that Puleo's role as an Animal Care Administrator was eliminated after MMRI transitioned from a large- to small-animal research laboratory, and she lacked the necessary experience for the post-renovation Animal Care Assistant

4

position; and (2) that a lack of grant funding made it impossible for MMRI to retain her in a temporary research assistant role.

Puleo has not shown that MMRI's restructuring and transition to small animal research was a pretext for discrimination. It is undisputed that MMRI decided to invest significant resources in building a new vivarium to conduct research primarily on transgenic or genetically modified mice. Puleo's arguments that MMRI continued to have a need for her large animal skills because it maintained some plans to build a large animal facility in the future are unavailing. The record shows that at the time of the decision to terminate Puleo, MMRI believed that Puleo's skills were no longer necessary because large animal research would not be conducted for the foreseeable future.

As to the newly created Animal Care Assistant job, Puleo argues that experience with small animals – specifically, transgenic or genetically modified mice – was not essential to the position and that, in any event, she did have some experience with genetically modified mice prior to 2015. But the record indicates that the Animal Care Assistant position required applicants to have familiarity caring for and breeding genetically modified mice and that the director of research, who was responsible for hiring the person to fill the position, understood Puleo to

lack that experience. Moreover, the record makes clear that Puleo *never actually applied* for the job of Animal Care Assistant after MMRI's transition, even though, Defendants contend, she was told that MMRI was hiring for the position.

But even if Puleo had applied for the position and been rejected, the record is devoid of evidence suggesting that her credentials were "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected" absent an exercise of discrimination. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted). In fact, Puleo confirmed in her deposition that she lacked experience with transgenic mice in particular.

Her arguments concerning the temporary research position fare no better. Although Puleo makes much of the fact that Defendants cut funding for her position after previously predicting that her salary would be included in the upcoming budget, she has not presented evidence to suggest that the budget shortfall that prevented her retention was a pretext for sex discrimination. Puleo counters that five women were terminated under the chief financial officer and that MMRI retained a man in the position of research assistant. But the unrebutted evidence shows that, regardless of his involvement in other

6

terminations, the chief financial officer played no role in Puleo's termination. And while it is true that MMRI retained a male research assistant at the time Puleo was terminated, the record reveals that the other research assistant retained by MMRI was female. Puleo provides no other information about the makeup of MMRI's workforce that would permit a factfinder to conclude the existence of a sex-based disparity, much less that Puleo's termination gave "rise to an inference of discrimination." *Bart*, 96 F.4th at 570 (internal quotation marks omitted).

For all these reasons, we agree with the district court that summary judgment in Defendants' favor was warranted on Puleo's Title VII claim.

## II. ADEA Discrimination

Puleo's claim for age discrimination under the ADEA is subject to the same three-part *McDonnell Douglas* framework, with one exception. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). At step three, an ADEA plaintiff "must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." *Id.* (internal quotation marks omitted). We agree with the district court that Puleo has not made such a showing here.

To rebut Defendants' nondiscriminatory reasons for her termination, Puleo relies primarily on the fact that the man who filled the Animal Care Assistant position was thirty-three years younger than she was. But without more, the mere fact that the person hired was younger is not enough to establish that MMRI's stated reason for firing was pretextual. *See Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999) ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."). Moreover, as noted above, Puleo does not dispute that the person hired as the Animal Care Assistant was qualified for the position and that Puleo herself did not even apply for the job after MMRI's transition to a small-animal testing facility. Considering the record as a whole, we cannot say that Puleo has met her burden at step three to create a genuine dispute that age discrimination was the but-for cause of her termination.

With respect to the research assistant position, Puleo's evidence is even thinner. Although she insists that all of the women terminated during the chief financial officer's tenure at MMRI were over the age of forty, she again overlooks the fact that the chief financial officer played no role in her termination. She likewise provides no evidence about the composition of MMRI's workforce as a

8

whole, thus preventing a reasonable factfinder from drawing any inference of age discrimination. More specifically, the record is silent as to the ages of the two research assistants who were retained instead of her. Given this dearth of evidence, no reasonable factfinder could conclude that MMRI's stated reasons for firing Puleo were pretextual and that age discrimination was the but-for cause of her termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("Unlike Title VII . . . a plaintiff may [not] establish [ADEA] discrimination by showing that age was simply a motivating factor."). Accordingly, we agree with the district court that Defendants were entitled to summary judgment on Puleo's age discrimination claims.

## III. NYSHRL

Before turning to Puleo's state-law claims, we must first determine whether the district court properly exercised supplemental jurisdiction over those claims in light of the dismissal of Puleo's federal claims. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). Congress has provided that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C.

9

§ 1367(a).   Claims form part of the same case or controversy when they "derive

from a common nucleus of operative fact."   *City of Chicago v. Int'l Coll. of Surgeons*,

522 U.S. 156, 165 (1997) (internal quotation marks omitted).

Although the district court did not explain its exercise of supplemental

jurisdiction over Puleo's state-law claims, there can be no doubt that both the

federal and state claims derive from a common nucleus of fact – namely, Puleo's

termination from MMRI.   We therefore have little difficulty concluding that the

district court did not abuse its discretion in exercising supplemental jurisdiction

over Puleo's NYSHRL claim, particularly since the case is no longer "at a relatively

early stage and the remaining claims [do not] involve[] issues of state law that [a]re

unsettled."   *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

Turning to the merits of Puleo's state-law claims, we agree with the district

court that Defendants were entitled to summary judgment for the same reasons

discussed above in connection with Puleo's federal claims.   *See Leibowitz v. Cornell

Univ.*, 584 F.3d 487, 498 n.1 (2d. Cir 2009) ("Age discrimination claims brought

pursuant to the NYSHRL . . . are analyzed under the ADEA framework . . . just as

gender discrimination claims brought pursuant to the NYSHRL . . . are analyzed

under the Title VII framework.").

\* \* \*

We have considered Puleo's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court